IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN SOTO-RAMIREZ, )
)
        Petitioner, )
)
V. ) Civil Action No._____
) (97-76-CR-DRD)
)
UNITED STATES OF AMERICA, )
)
        Respondent. )
)

### PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 22 U.S.C. § 2255

Petitioner, Juan Soto-Ramirez, acting in a pro se capacity respectfully files this Memorandum of Points and Authorities in support of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In Support thereof he states:

This application raises several questions of constitutional, statutory, evidentiary, and procedural law. Some of the issues are complex or novel. Since the issues in this application are challenging and the stakes are high, Petitioner prays that this Court entertain an evidentiary hearing to further develop the record.

Following the question of whether Petitioner has alleged constitutional error, it is respectfully asked that this Honorable Court construe this pro se application liberally. See, **Haines v. Kerner**, 404 U.S. 519 (1972).

## STATEMENT OF THE CASE

The Court will have the benefit of file in this case. There is no need to repeat the entire procedural and factual history of this case here. Suffice it to say that:

A. Statement of Proceedings.

Petitioner Juan Soto-Ramirez (hereinafter "Petitioner") was jury tried in the United States District Court for the District of Puerto Rico before the Honorable Daniel R. Dominguez, United States District Judge. He was convicted on the first count, the continuing criminal enterprise ("CCE"), and sentenced to life imprisonment.

Petitioner appealed his conviction to the United States of Appeals for the First Circuit, Docket No. 01-1674. That court affirmed his conviction in a published opinion dated November 20, 2003. See, U.S. v. Soto-Beniquez, 356 F.3d 1 (1st Cir. 2003). Petitioner then sough a petition for a Writ of Certiorari to the United States Supreme Court, Docket No. 04-8347. That court denied that petition for a writ of certiorari on June 1, 2004.

Thereafter, Petitioner sought, pro se, recall of the mandate issued by the circuit court that was denied on December 10, 2004, and a subsequent petition for a writ of certiorari, Docket No. 04-8347, that was also denied on February 28, 2005.

This first habeas corpus petition under Title 28 U.S.C. § 2255 (hereinafter "2255 Motion"), ensues.

B.  Statement of Facts.

On January 8, 1992, Petitioner pled guilty before the local court of Puerto Rico to several violations to the weapons law, two homicides, attempted murder, and accessory after the fact in which he was sentenced and incarcerated. After being in custody for more than five years, he was arrested by the federal agents pursuant two count indictment returned by the Grand Jury on April 9, 1997. On December 14, 1998, a superseding indictment was returned against Petitioner and twenty additional individuals.

Count one of the superseding indictment charged Petitioner with a continuing criminal enterprise to 21 U.S.C. § 848(a) and (b), 18 U.S.C. § 2, and in count two with conspiracy to possess more than 5 Kilograms of cocaine , cocaine based, heroin and marihuana in violation of 21 U.S.C. § 841(a)(1) and 846. The alleged conspiracy period compromise from in or about January of 1990 until March of 1994.

Petitioner's counsel filed various pretrial motions, but failed to seek a pretrial dismissal of indictment or, any other type of remedy, to balance the damage caused to Petitioner's right to a fair trial, because the government's delay in bringing accusations against him.

The Government based its case principally in "hearsay" testimony of various government witnesses of persons already dead, allegations of Petitioner's continue control of the drug points since prison (through the telephone), and in the "expert" testimony of various government personnel. Petitioner's counsel

strongly opposed to the admission of those hearsay testimonies, those allegations, and those expert testimonies during trial. However, that counsel failed to seek evidence supporting those allegations relating to Petitioner's continue control of the drug points since prison through the telephone, and/or to offer rebuttal evidence of the lack of telephone system within the Puerto Rico prison system at the time that those alleged telephone calls were made.

After resting her case Petitioner's counsel sought to instruct the jury to find the amount and type of drugs as to each defendant, by a way of requesting an special verdict so the jury were able to determine the amount and type of drugs attributable to Petitioner. However, that counsel failed to seek to instruct the jury for a "less include offense" as a remedy to balance the damage caused to Petitioner by the various prosecutorial misconducts perpetrated throughout the entire proceeding.

During the sentencing process, Petitioner's counsel strongly opposed and objected to the used of "expert" calculations on cocaine base in order to determine whether Petitioner was involved in the trafficking of one point five kilograms of cocaine base, in particular, that counsel argued that it was an error to sentence Petitioner upon findings not presented to the jury nor, admitted by Petitioner, which were presented "only" at that sentencing process for the sole purpose of imposing the harshest sentence set forth under the statute [21 U.S.C. § 848(b)], that was a mandatory minimum of life imprisonment. Petitioner's counsel also strongly opposed and objected to sentencing enhancements (i.e. leadership

4

and drug amount), found by the District Court Judge by preponderance of the evidecene not by the jury verdict. Furthermore, Petitioner's counsel sought a downdeparture based upon the unfairness of the trial and post-conviction rehabilitation matters. However, that counsel failed to seek a sentencing option under the less included conviction (that was the §§ 841 and 846 convictions), as a curative measure to the unfairness of the trial and post-conviction rehabilitation matters.

On appeal, same counsel resumed, among other things, the aforementioned arguments. Specifically, the ones related with the District Court's refusal to grant Petitioner's requests for a Special Verdict Instructions so the jury were able to determine the type an amount the drug attributed to each defendant, and Petitioner's request to preclude the sentence enhancements that had not been found by the jury verdict, etc. The Court of Appeals, affirmed Petitioner's conviction, and entering in a conflict with the rule announced in **Apprendi v. New Jersey**, 530 U.S. 466 (200), also affirmed Petitioner's sentence. See, **U.S. v. Soto-Beniquez**, 365 F.3d 1 (1st Cir. 2003).

Thereafter, Petitioner sought a Petition for Writ of Certiorari before the United States supreme Court that was denied on June 1, 2004.

Because, in the interim the United States Supreme in **Blakely v. Washington**, 542 U.S. ___, 124 S. Ct. 2531 (2004), explained that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without additional findings," **clearly demonstrating**

5

an erroneous interpretation of the **Apprendi** ruling by the lower courts in this instance. Petitioner, before filing his § 2255 motion and in the best interest of the judicial economy, sought recall the mandate issued by the Court of Appeals. However, it was denied on December 10, 2004.

A subsequent petition for writ of certiorari before the United States Supreme Court relating to this denial to recall the mandate issued by the lower court in light of **Blakely v. Washington**, **supra**, was also denied.

Accordingly, this § 2255 motion to vacate, set aside, or correct sentence follows.

## ARGUMENT

Petitioner is acting *pro se* and will keep this argument simple. Further, he avers that although this petition raises some claims of ineffective assistance of counsel, he recognizes that his trial and appeal lawyer Miriam Ramos Gateroles, Esq. merit the fine reputation that she enjoy in the legal community and before this Court and others.

However, in some particular instances, as outlined below, her representation fell bellow Sixth Amendment standards. This petition should not be viewed as an attack upon the very capable trial and appeal capability of Ms. Ramos Gateroles. Rather, this petition pertain to specific separate events which raise constitutional questions in the context of pretrial motions, complicated by matters arising during trial and post-trial.

A.  Standard of Proof Necessary to Establish Sixth Amendment

<u>Violation.</u>

In all instances where a habeas petitioner asserts ineffective assistance of counsel, the standard announced by the Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984) applies.

**Strickland**, requires that a [Petitioner] shows: (1) that counsel's representation fell bellow an objective standard, and (2) but counsel's errors there is a reasonable probability that the result of the proceedings would have been different, thus prejudicing the [Petitioner]. **Strickland**, 466 U.S. at 687; **Epson v. Hall**, 330 F.3d 49, 51 (1st Cir. 2000); see also **Smullen v. U.S.**, 94 F.3d 20, 23 (1st. Cir. 1996).

In this instances, both requirements are present. **First**: When Petitioner's counsel failed to "timely" requests dismissal of the indictment or, a less drastic sanction as a curative measure, because; (1) the government's delay to bring accusations against petitioner; (2) the government's violation of the status limitation; and/or (3) the doctrines of <u>Estoppel</u> and <u>Laches</u> warranted such dismissal. Had Petitioner's counsel "timely" filed that "pretrial" request, seeking dismissal of the indictment upon the afore reasons, existed a reasonable probability that such request would had been conceded by the government, and therefore, granted by the Court because, among other things, the "only" testimonial evidence that the government could have offered (at that time) e.g. alleging petitioner's participating in the conspiracy after January 1992, could have came from a government witness that was under investigation (by same United States Attorney's Office at same time), for committing perjury before the same Grand Jury who investigated

and brought the indictment against Petitioner and his codefendants. A risk the government was not willing to take because it could have jeopardized the all case, and leaving it with not other alternative than to concede to the request for dismissal of the indictment against Petitioner.

Further, assuming, arguendo that the government would have presented other witnesses, existed a reasonable probability that the request for dismissal would have been granted by the Court under the doctrines of estoppel and laches, since all of the elements, i.e. "for estoppel;"

> (1) the party to be estopped must know the facts; (2) He must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant the facts; and (4) that party must rely on the former's conduct to his injury.

" for laches;"

> (1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused the party undue prejudice.

warranting the applications of these doctrines were present, at that time, in this case. Based upon the foregoing is evident that petitioner counsel's failure to "timely" request dismissal of the indictment under these grounds was unreasonable and prejudiced the Petitioner, thus under this grounds alone, Petitioner's conviction and sentence should be vacated.

**Second:** When Petitioner's counsel failed to impeach some government's witnesses (during trial), with evidence showing that at the time those witnesses alleged that "Petitioner was communcating with co-conspirators and controlling the drug points through the

telephone since his prison's cell," there was not a telephone system for inmates use within the Puerto Rico Prisons System, and therefore, making it impossible any communication and much less any control of the drug points through the telephone as alleged by those government's witnesses. Had Petitioner's counsel "timely" rebutted those allegations with available, uncontrovert evidence, showing the lack of a telephone system within the Puerto Rico Prisons System (the "only" link to Petitioner with the conspiracy) it could have created a reasonable doubt within the juries enough to presume that the result of the proceeding would have been different.

This specific error committed by petitioner's counsel during trial, amount to ineffective assistance, **Strickland**, 466 U.S. at 693-696; **Kilmmelman v. Morrison,** 477 U.S. 365, 383 (1986)(....this Court said that a single , serious error may support a claim of ineffective assistance of counsel); **United States v. Cronic**, 466 U.S. 648, 657 n.20 (1984); see, also **Silva v. Woodford**, 279 F.3d 825, 833 (1st Cir. 2002)(An attorney's failure to prepare and challenge the testimony of a critical witness may so be unreasonable as to violate both prongs of the Strickland test). Moreover, since this error clearly prejudiced the Petitioner's trail and caused a verdict of guilty by the jury this Court should consider this matter along with the previously raised issues and vacate Petitioner's conviction and sentence.

**Third:**   When Petitioner's counsel failed to seek from the Court to instruct the jury with a "less included offense" instruction as a curative measure to balance the improper conduct of the government during the entire proceeding. Had that counsel requested

9

such instruction, exited a reasonable probability that, but counsel's error, this Court "in light of the history of the case" and the "totality of the circumstances" would have granted such request as a "less drastic curative measure (than to dismiss all the charges against Petitioner, as requested by his counsel), to balance the unfairness of the trial so affected by government's actions. More important, or that the jury presented with that "option" would have found Petitioner guilty of the less included offense.

**Fourth:** When Petitioner's counsel failed to seek a sentencing option from the Court under the less included conviction (that was the §§ 841 and 846 conviction), as a less drastic curative measure to balance the unfairness endured by Petitioner during trial by government's actions (i.e. delay in bringing accusations, due process violations, etc.). Had Petitioner's counsel sought from the Court (when it was presented with the dilemma to sentence the Petitioner for "only" one of the two charges of conviction to avoid a double jeopardy issue), to sentence Petitioner under the "less included conviction," as an option and less drastic curative measure to balance and correct the unfairness endured by Petitioner during trial because the government's actions, existed the probability that, this Court in its wisdom would have granted such requested and sentence Petitioner to a less severe sentence than the life imprisonment imposed in this instance. Since, but counsel's errors, the resulted of Petitioner's conviction and sentence could have different, this Court must vacate the conviction and sentence in this case, and

**Fifth:** When "after having strongly objected during trial to the use of 'hearsay' testimony of unavailable witnesses," same counsel, inexplicably failed to pursue these objections on direct appeal. Had Petitioner's counsel renewed these objections on direct appeal as it was required, see, e.g. **U.S. Mannino**, 212 F.3d 835, 845 (3rd Cir. 2000)(counsel's failure to renew objection on appeal to court's methodology in determining the amount of heroin attributable to defendants at sentencing was ineffective assistance because had the issue been raised, the court of the appeal would have vacated the sentence[s] and remanded for proper analysis); **Delgado v. Lewis**, 181 F.3d 1087, 1092 (9th Cir. 1999)(counsel's failure to raise any arguable issues in appellate brief was ineffective assistance), existed a reasonable probability that the appellate court would have reversed the judgment entered against Petitioner, and his conviction and sentence vacated. Or, in the alternative, the Supreme Court would have granted Petitioner's pending Writ of Certiorari and the judgment vacated in light of that Court's "contemporaneous decision" in **Crawford v. Washington**, 451 U.S. ___, 124 S. Ct. 1354 (2004)[1]. More important, Petitioner would not be facing now the uncertainty of the retroactive application of the **Crawford** decision in this instance[2].

Based upon the foregoing, this Court should direct that an evidentiary hearing be held on all of the issues of ineffective assistance of counsel, and/or grant habeas corpus relief on the grounds that ineffective assistance of counsel has been shown.

---

[1] **Crawford**, states that "Sixth Amendment demands what common
(continued on next page...)

11

B. Trial Court's Errors of Constitutional Dimensions Requires Reversal of Petitioner's Conviction and Sentence.

Since the issues presented in this section were previously denied by this Court and the Appeals Court. Petitioner invokes the "an intervening change in the law" exception to the rule as explained by the Supreme Court in **Davis v. United States**, 417 U.S. 333, 342 (1974), and adopted by this Circuit Court in **Robson v. United States**, 526 F.2d 1145, 1147-48 (1st Cir. 1975)(.....a petitioner is not precluded from raising in a § 2252 proceeding legal issues that were raised in a prior direct appeal and determined against him if there has been "an intervening change in the law."), so he may relitigate these issues on the merits herein.

**Petitioner's conviction and sentence were obtained because of several reversible constitutional errors requiring review by this Court.**

**First**, the denial by this Court to Petitioner's request for a special verdict sheet requiring the jury to find the type and amount of drugs attributable to him in regard to the CCE Count, based in a erroneous interpretation of requirement set forth by

---

(...continued from previous page), law required: unavailability if witness and a prior opportunity for cross-examination. Id. at 1369-1374.

[2] See, e.g. **Bockting v. Bayer**, 399 F.3d 1010, 1014 (9th Cir. 2005); Cf **Brown v. Uphoff**, 381 F.3d 1219 (10th Cir. 2004); and **Mungo v. Duncan**, 393 F.3d 327, 336 (2nd Cir. 2004).

12

the Supreme Court in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), violates Petitioner's Fifth Amendment right to due process and the Sixth Amendment right to a jury determination of guilty of every element of the crime with which he was charged, beyond a reasonable doubt. <u>U.S. v. Rivera Calderon</u>, 354 F. Supp. 2d 86, 101 (D. Puerto Rico 2005).

In this instance, the superseding indictment charged in pertinent part that Petitioner and an additional coconspirator

> aiding and abetting each other, did, knowingly and intentionally, engage in a continuing criminal enterprise, as this term is defined in Section 848(c), Title 21, <u>United States Code</u>,

but it was silent as to the remaining subsections. By specifiying the statute by which he was charged, Petitioner was put on notice of the offense that was facing. However, the language of the indictment by itself does not evidence that the jury, by the naked act of returning a guilty verdict on that charge, actually found Petitioner responsible for the amount and type of drugs sufficient to sentence him under any of the remainder subsections. [See, e.g. 21 U.S.C. § 848(a) and (b)], as occurred herein.

Putting it simple, Petitioner was found guilty of knowingly and intentionally, engaging in a continuing criminal enterprise, upon a general verdict instruction not upon the a special verdict for the CCE count, as requested. Specifically, this Court refused to instruct the jury to determine the amount and type of drugs, and to find the minimum of drug amount attributable to the Petitioner, "apparently" under the erroneous assumption that the "drug amount" was not an element of the offense because the CCE statute does not

13

require quantity, type or, minimum of drug amount, since the statutory maximum for "CCE" was already life in prison. Inasmuch as, this assumption has been proved demonstrable wrong by **Apprendi** and its progenies, see, e.g. **Ring v. Arizona**, 536 U.S. 584, 122 S. Ct. 2428 (2002); **Blakely v. Washington**, 542 U.S.____, 125 S. Ct. 2531 (2004); see also **U.S. v. Calderon**, 354 F. Supp. 2d at 90-91. Petitioner's conviction and sentence should be vacated because his due process right to have a jury to determine "beyond a reasonable doubt" all facts essential to his conviction were violated by this court's refusal to instruct the jury to determine the quantity and type of drugs, and to find the minimum of drugs attributable to him.

**Second:** By Court's determination of quantity and type of drugs attributable to Petitioner at the sentencing proceeding on its own finding and by preponderance of evidence in violation of Petitioner's due process right to have a jury to determine beyond a reasonable doubt the amount, type, and minimum of drugs attributable to him, as explained in **Apprendi** and clarified in **Blakely**. See **Blakely** at 2536:

> "the 'statutory maximum' for **Apprendi** purposes is the maximum sentence a judge may impose **solely on the basis of facts reflected in the jury verdict or admitted by the defendant.** In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his authority......

A cursory examination of the March 28, 2001 Sentencing

Transcripts in this case will show that this Court made some of this excess of authority at the sentencing proceeding. For example, this Court attributed to Petitioner on its own finding and by preponderance of evidence that Petitioner was responsible for; (1) "at least 300 times the quantity of drug described in the indictment;" (2) all the crak cocaine cooked by one of the government's witness who was running his own operation "because" he was charged as one of the leaders of the conspiracy; and (3) running drug points while in prison, et cetera.

Since, all of these findings were made by this Court on its own and by preponderance of evidence[4], not beyond a reasonable doubt, more important, were not made by the jury or admitted by Petitioner, and inflicted and additional punishment beyond the jury's verdict, all these findings were unconstitutionally made, and therefore, must be removed from Petitioner's sentence, so Petitioner may be resentenced in accordance with the jury's verdict and the due process clause of the Constitution.

**Third:** By sentencing Petitioner under a subsection of Title 21 U.S.C. § 848 that the Petitioner had not been charged with in the superseding indictment, and therefore, not permitted under the jury's verdict.

As previously, stated, id at 13, the superseding indictment charged Petitioner with a violation of § 848(c) which defines the meanings of the statute but does not included specific penalties. See 21 U.S.C. § 848(c).

---

[4] See, e.g. March 28, 2001 Sentence Transcripts at p. 15 & 16.

15

The jury found Petitioner guilty of such violation. However, this Court sentenced Petitioner under § 848(b), among other things, because Petitioner allegedly controlled four or five drug points (while in prison), sold three hundred times the minimum amount required under § 841(b)(1)(B), and was a principal or one of the principals or administrator, organizer or leader of the entreprise, [March 28, 2001 Sentencing Transcripts at 54, 69-70.] and thereby committed Petitioner to the custody of the Bureau of Prison for life imprisonment, id. as 70.

This, being the type of punishment proscribed under **Apprendi** and its progenies, id. at 14, constitutes an error of constitutional dimension that requires the reversal of Petitioner's sentence, and

**Fourth:** Because the Court permitted the use at sentencing of a government "expert" witness to calculate the amount of drug attributable to the Petitioner in order to trigger an "automatic" life sentence under an uncharged subsection of § 848.

Contrary to the holding on **Apprendi**, this Court allowed the Goverment to bring (for the first time) an expert witness, during the sentencing phase to calculate the amount of drug attributable to the conspiracy by preponderance of the evidence so that amount may permit the automatic life sentence required under § 848(b), and therefore, sentenced Petitioner to life imprisonment upon enhanced drug calculations facts that were not charged in the indictment, nor, were it submitted to the jury, or proved beyond a reasonable doubt, instead of sentencing Petitioner under the "only" permissible offense by the jury's verdict that was 848(a) for which no quantity need be alleged or proved.

Had this Court followed **Apprendi**, and sentenced Petitioner based upon the jury's verdict and the "only" permissible offense [§ 848(a)], which establish a base 20 years sentence, not a mandatory life imprisonment as with the applied herein aggravated additional quantity crime under the § 848(b), it had not made a reversible **Apprendi** error, and Petitioner's sentenced need not to be vacated. However, because the error is apparent, Petitioner's sentence must be vacate.

Based upon the foregoing previously preserved sentencing issues, Petitioner's sentence must be vacated.

### CONCLUSION

For the foregoing reasons and the record in this case, this Honorable Court is respectfully urged to grant Petitioner's motion to vacate his conviction and sentence, or, at a minimum to grant the Petitioner an evidentiary hearing on the instant motion.

Respectfully submitted,

on this  25th  day of May, 2005.

By: *Juan A. Soto* (signature)
Juan A. Soto-Ramirez,
Pro Se Petitioner,
FCC-USP 1
PO Box 1033-14698-069
Coleman, Fl 33521-1033